IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CLAUDIA PRITCHETT,

    Plaintiff,

v.

BP EXPLORATION &
PRODUCTION INC., ET AL.,

    Defendants.

Civil Action No. 24-524

---

David T. Crumplar, JACOBS & CRUMPLAR, P.A., Wilmington, Delaware;
Patrick C. Gallagher, JACOBS & CRUMPLAR, P.A., New Castle, Delaware;
David Durkee, Sheeba Ajwani, THE DOWNS LAW GROUP, Miami, Florida

    *Counsel for Plaintiff*

Paul A. Bradley, Antoinette D. Hubbard, MARON MARVEL BRADLEY ANDERSON & TARDY LLC, Wilmington, Delaware; P. Bradford deLeeuw, DELEEUW LAW LLC, Wilmington, Delaware; Jason D. Angelo, REED SMITH LLP, Wilmington, Delaware; A. Katrine Jakola, Kristopher S. Ritter, KIRKLAND & ELLIS LLP, Chicago, Illinois; Kerry J. Miller, Paul C. Thibodeaux, Danielle C. Teutonico, FISHMAN HAYGOOD LLP, New Orleans, Louisiana; R. Alan York, REED SMITH LLP, Houston, Texas

    *Counsel for Defendants*

**MEMORANDUM OPINION**

August 9, 2024
Wilmington, Delaware

_____<br>
COLM F. CONNOLLY<br>
CHIEF JUDGE

Plaintiff Claudia Pritchett has sued Defendants BP Exploration & Production Inc., BP America Production Company, Transocean Holdings LLC, Transocean Deepwater, Inc., Transocean Offshore Deepwater Drilling Inc., and Halliburton Energy Services, Inc. for negligence and gross negligence. D.I. 1. Pending before me is Defendants' motion to transfer the case to the Southern District of Alabama pursuant to 28 U.S.C. § 1404(a). D.I. 47.

## I. BACKGROUND

On April 20, 2010, workers on the *Deepwater Horizon* oil rig lost control of the Macondo Well, causing an explosion that led the *Deepwater Horizon* to catch fire. D.I. 1 ¶ 30. As a result of the explosion and fire, millions of gallons of oil discharged into the Gulf of Mexico over the next 87 days. D.I. 1 ¶ 35.

The incident led to an extraordinary volume of litigation. In response, the Judicial Panel on Multidistrict Litigation (JPML) assigned Judge Carl Barbier of the Eastern District of Louisiana to oversee the ensuing multidistrict litigation (MDL): MDL 2179. D.I. 48 at 4. Judge Barbier organized categories of cases and ordered that personal-injury claims be placed in the "B3 bundle." D.I. 48 at 4.

On November 29, 2023, Plaintiff filed this suit, alleging in her complaint personal injury due to exposure to toxic chemicals from the *Deepwater Horizon* oil

spill. D.I. 1 ¶ 1. Defendants—Delaware corporations with their principal places of business in Houston, Texas—were involved with drilling and production-related operations on the *Deepwater Horizon*. D.I. 1 ¶¶ 3–11. Plaintiff is a citizen and resident of Baldwin County, Alabama. D.I. 1 ¶ 2. Plaintiff alleges that she "was exposed to toxic [chemicals] in and around Alabama, Mississippi, Florida, specifically in and around Pensacola, Gulf Shores, Fairhope, Mobile, and the Mississippi River Delta." D.I. 1 ¶ 79. Plaintiff particularly alleges exposure at her residence and work near Mobile Bay, Alabama. D.I. 1 ¶ 80.

On December 19, 2023, Defendants moved the JPML to consolidate this case in MDL 2179 for compliance with claim substantiation procedures. D.I. 56 at 1. On January 3, 2024, the case was conditionally transferred to the Eastern District of Louisiana. D.I. 11. Upon the MDL court's completion of the claim substantiation process, the court issued a suggestion of remand to the JPML. D.I. 56 at 1. On April 26, 2024, the case was remanded to this Court. D.I. 17.

## II.   DISCUSSION

### A.   Legal Standard

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Defendants

2

contend, and Plaintiff does not dispute, that this action could have been brought in the Southern District of Alabama. *See* D.I. 48 at 9–10. Thus, the only issue before me is whether I should exercise my discretion under § 1404(a) to transfer this case to the Southern District of Alabama.

Defendants have the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). This burden is heavy. "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Id.* (emphasis added) (internal quotation marks and citation omitted).

Although there is "no definitive formula or list of the factors to consider" in a transfer analysis, the Third Circuit identified in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), 12 interests "protected by the language of § 1404(a)." *Id.* Six of those interests are private:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* (internal citations omitted). The other six interests are public in nature:

3

> [7] the enforceability of the judgment; [8] practical considerations that could make the trial easy, expeditious, or inexpensive; [9] the relative administrative difficulty in the two fora resulting from court congestion; [10] the local interest in deciding local controversies at home; [11] the public policies of the fora; and [12] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (internal citations omitted). As the parties have not identified relevant factors beyond these 12 interests, I will balance the *Jumara* factors in deciding whether to exercise the discretion afforded me by § 1404(a).

### B.  Analysis of the *Jumara* Factors

#### 1.  Plaintiff's Forum Preference

This factor is of paramount importance and therefore weighs strongly against transfer. *VLSI Tech. LLC v. Intel Corp.*, 2018 WL 5342650, at *4 (D. Del. Oct. 29, 2018).

#### 2.  Defendant's Forum Preference

This factor favors transfer.

#### 3.  Whether the Claim Arose Elsewhere

This factor favors transfer. Plaintiff's claim primarily arose from exposure to toxic chemicals in Alabama. "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 481 (D. Del. 2011).

4

### 4. The Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

This factor favors transfer. Courts determine the convenience of the forum by considering: "(1) the parties' physical location; (2) the associated logistical and operational costs to the parties in traveling to Delaware—as opposed to the proposed transferee district—for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal." *Tumbaga v. Equifax Info. Servs., LLC*, 2020 WL 4673907, at *3 (D. Del Aug. 12, 2020). On the one hand, no party has a physical presence in Delaware, the Southern District of Alabama is geographically closer to both parties, and it will be more convenient for the parties' fact and expert witnesses to provide testimony in Alabama.[1] On the other hand, Defendants are large, multinational corporations, that chose to incorporate in Delaware. *See ZapFraud Inc., v, Barracuda Networks, Inc.*, 2010 WL 4335945, at *5 (D. Del. July 28, 2020) ("[I]t is hard for [Defendant] to argue that this district is a decidedly inconvenient forum, since it is incorporated here."). On balance, this factor favors transfer.

---

[1] It is undisputed that Plaintiff's physicians practice in either Mobile, Alabama or Houston, Texas. *See* D.I. 48 at 7; *see generally* D.I. 56.

5

### 5. The Convenience of Witnesses to the Extent They May Actually be Unavailable for Trial in One of the Fora

This factor is neutral, as there are no allegations that any witnesses would be unavailable for trial in either forum.

### 6. The Location of Books and Records

The parties do not dispute that this factor is neutral. *See* D.I. 48 at 14; D.I. 56 at 16.

### 7. The Enforceability of the Judgment

This factor is neutral, as there are no allegations that a judgment would be unenforceable in either forum.

### 8. Practical Considerations

This factor favors transfer. *Jumara* instructs me to give weight to "practical considerations that could make the trial easy, expeditious, or inexpensive." 55 F.3d at 879. It is undisputed that Plaintiff's counsel has pursued dozens of B3 actions in the Southern District of Alabama, and these actions have been governed by a single district-wide B3 case management order. *See* D.I. 48 at 15; *see generally* D.I. 56. It stands to reason that the judges in the Southern District of Alabama have therefore gained familiarity with the laws and facts applicable to B3 cases. In contrast, it is undisputed that Plaintiff's action would represent the first B3 claim in Delaware in the fourteen-year history of the *Deepwater Horizon* litigation. *See* D.I. 48 at 16; *see generally* D.I. 56. Because "[a]djudicating almost

6

identical issues in separate fora would waste judicial resources[,]" this factor favors transfer. *In re Amendt*, 169 Fed. App'x. 93, 96 (3d Cir. 2006).

### 9. Relative Administrative Difficulty Due to Court Congestion

This factor favors transfer. This Court's docket is substantially more congested than the Southern District of Alabama's docket. To analyze the relative levels of court congestion between the two districts, I take judicial notice of the most recent Federal Court Management Statistics published by the United States Courts. *See U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (December 31, 2023)*, ADMIN. OFF. OF THE U.S. CTS., https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-december-2023 [https://perma.cc/9GLS-T6ZA]. These statistics cover the 12-month period ending on December 31, 2023.

According to these statistics, the weighted case filings per active judgeship in this District is 666. In the Southern District of Alabama, the weighted case filings per active judgeship is 318. The number of pending cases per judgeship in this District is 559. In the Southern District of Alabama, the number of pending cases per judgeship is 311. Thus, a judge in this District has on average 200 more weighted case filings and pending cases than a judge in the Southern District of Alabama.

7

Given these caseload differences, it is no surprise that the median time between filing and trying a civil case in this District (38.0 months) is much longer than in the Southern District of Alabama (24.4 months). And although Plaintiff correctly notes that the median time between filing and disposition of a civil case in this District (8.3 months) is shorter than in the Southern District of Alabama (9.9 months), D.I. 56 at 18, the reality is that this Court's docket is much more congested than the Southern District of Alabama's. Thus, this factor favors transfer.

### 10. Local Interest in Deciding Local Controversies at Home

This factor favors transfer. Plaintiff's complaint alleges that, as a resident of the Southern District of Alabama, she was exposed to harmful toxins within that District's borders. D.I. 1 ¶¶ 79–80. Alabama thus has a powerful interest in deciding the merits of those claims and ensuring their consistent adjudication.

Delaware, on the other hand, has no connection to the events giving rise to this action.

### 11. Public Policies of the Fora

This factor transfer. Defendants argue that Plaintiff's allegations of exposure to harmful toxins at various locations within Alabama implicate Alabama's environmental and public health policies, as well as its public policy interest in having this matter adjudicated in its courts. D.I. 48 at 18–20. Plaintiff

8

counters that Alabama has no public policy interest in matters arising from the *Deepwater Horizon* spill because Defendants have already settled lawsuits with Alabama. D.I. 56 at 19. But Plaintiff's argument, that a state no longer has a public policy interest in the matters of its citizens once the state has entered into a settlement agreement, is entirely unsupported.

And although "Delaware's public policy encourages Delaware corporations to resolve their disputes in Delaware courts," that "concern is irrelevant since [Plaintiff] is not a Delaware corporation, and the defendant, which is a Delaware corporation, does not want to litigate here." *Realtime Data LLC v. Egnyte, Inc.*, 2018 WL 5724040, at *6 (D. Del. Nov. 1, 2018).

Thus, I agree with Defendant that Alabama's public policy interests are implicated in this case, whereas Delaware's public policy interests are not.

### 12.  Familiarity of the Trial Judges with the Applicable State Law in Diversity Cases

The parties do not dispute that when a case, like this one, is not a diversity action and does not implicate state law, this District finds this factor to be neutral. *See Puff Corp. v. KandyPens, Inc.*, 2020 WL 6318708, at *6 (D. Del. Oct. 28, 2020).

\* \* \* \*

In sum, of the 12 *Jumara* factors, seven weigh in favor of transfer, one weighs against transfer (and is to be given paramount importance), and four are

9

neutral. Considered in their totality, the factors weigh strongly in favor of transfer to the Southern District of Alabama.

## III. CONCLUSION

For the reasons discussed above, I will grant Defendants' motion to transfer the case to the Southern District of Alabama.

The Court will issue an Order consistent with this Memorandum Opinion.